UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DERRICK THOMPSON,

                              Plaintiff,

        - v -                                          Civ. No. 9:08-CV-487
                                                       (TJM/RFT)

MR. CARLSEN, *Superintendent of Ulster*
*Correctional Facility*; WHITE, *Ms., Administrative Nurse*;
FRANZA, *Nurse, Ulster Correctional Facility*;
CRAWLEY, *Nurse, Ulster Correctional Facility*,

                              Defendants.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

DERRICK THOMPSON
Plaintiff, *Pro se*
98-30 57th Avenue
Apt. 16K
Rego Park, NY 11368

HON. ANDREW M. CUOMO                     KRISTA A. ROCK, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Derrick Thompson has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs and therefore violated his Eighth Amendment rights. Dkt. No. 1, Compl. Defendants now move for summary judgment pursuant to FED. R. CIV. P. 56(c). Dkt. No. 24. Plaintiff opposes the Motion. Dkt. No. 26. For the reasons that follow, it is recommended that the Defendants' Motion be

**GRANTED**.

## I. FACTS

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not, in their entirety, specifically countered nor opposed by Plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>" (emphasis in original)). However, where Plaintiff has contradicted Defendants' Statement of Material Facts, either in his Complaint or in his Response in Opposition to Defendants' Motion, we will not deem those facts admitted for the purposes of addressing this Motion.

At around 9 a.m. on October 9, 2007, while Plaintiff was housed at Ulster Correctional Facility ("Ulster"), Plaintiff complained to his dorm officer about pain in his chest. Dkt. No. 24, Defs.' 7.1 Statement at ¶ 1. The dorm officer called Defendant Nurse Franza and informed her that Plaintiff wished to be seen by medical staff as soon as possible. *Id.* at ¶ 2. At the time Franza received that call, the regular sick call for that day was over, nonetheless, an emergency sick call procedure is available every day for inmates who need to be seen for a medical emergency. *Id.* at ¶¶ 3-4.

At around 9:30 a.m. that morning, Defendant Nurse Crawley received a phone call from a corrections officer working in Plaintiff's housing dorm, stating that Plaintiff was complaining about burning in his chest and wanted to be seen by medical staff. *Id.* at ¶ 9. Crawley advised the corrections officer that Plaintiff should sign up for the next available sick call. *Id.* at ¶ 10; Pl.'s Resp. in Opp'n to Defs.' Mot., Mem. of Law at p. 2. The corrections officer asked Crawley whether Plaintiff should be sent for emergency sick call, to which Crawley responded that Plaintiff's

description of his medical problem did not seem to constitute a medical emergency. Defs.' 7.1 Statement at ¶¶ 11-12. Crawley questioned the officer about whether Plaintiff was showing any signs of distress, including profuse sweating, chest pain and/or difficulty breathing. *Id.* at ¶ 13; Pl.'s Mem. of Law at pp. 3-4. There was no indication that Plaintiff was exhibiting any such symptoms. Defs.' 7.1 Statement at ¶ 14.

Thereafter, a sergeant sent Plaintiff to the infirmary to be seen by medical staff. *Id.* at ¶ 15. Nurse Crawley attended to Plaintiff upon his arrival in the infirmary, where he complained of chest pain. *Id.* at ¶¶ 16-17; Pl.'s Mem. of Law at p. 2. Plaintiff left the emergency room area without permitting Crawley to complete a more thorough physical examination. Defs.' 7.1 Statement at ¶ 21. Crawley issued Plaintiff a Misbehavior Report, alleging that after he arrived at the infirmary on October 9, 2007, Crawley denied his request for non-emergency medication and Plaintiff became loud, argumentative, and refused further assessment. *Id.* at ¶ 22; Dkt. No. 24-10, Nurse W. Crawley Aff., dated June 10, 2009, Ex. C, Misbehavior Rep., dated Oct. 9, 2007 (hereinafter "Misbehavior Rep."). In the Misbehavior Report, Plaintiff was charged with interference with an employee, harassment, and disobeying a direct order. Defs.' 7.1 Statement at ¶ 22; Misbehavior Rep. Plaintiff pled guilty to all three charges. Defs.' 7.1 Statement at ¶ 23.

On October 10, 2007, Plaintiff again went to the infirmary and was seen by Defendant Franza. *Id.* at ¶ 24. Plaintiff filed a Grievance regarding the allegedly inappropriate medical care provided on October 9, 2007. *Id.* at ¶ 25. That Grievance was processed pursuant to departmental policy and was ultimately denied. *Id.* at ¶¶ 28-29.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Eighth Amendment Claim

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992)) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical

condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In this case, Plaintiff asserts that Defendants Franza and Crawley were deliberately indifferent to his serious medical needs when they allegedly denied him treatment for his chest pain on October 9 and 10, 2007.

1. *Claims against Crawley*

In his Complaint, Plaintiff alleges that on October 9, 2007, Defendant Crawley denied his request to see a doctor and denied him medical treatment. Compl. at p. 3. Plaintiff further asserts that he was seen by a doctor on the following day, and was diagnosed as having a heart murmur. *Id.* In his Grievance, dated October 9, 2007, Plaintiff made the following allegations: On October 9th, Crawley denied his request to see a doctor through a corrections officer with whom she was speaking on the telephone. Grievance at p. 2. Thereafter, Plaintiff was sent down to the medical clinic, where Crawley again denied him the medical attention he needed. *Id.*

In her Affidavit submitted in support of the Motion for Summary Judgment, Crawley affirms that on the morning of October 9th, she received a phone call from a corrections officer working in Plaintiff's housing dorm, who told her that Plaintiff "was complaining of burning in his chest and that he was out of his acid reflux medication and wanted to be seen by medical staff as soon as possible."[1] Crawley Aff. at ¶¶ 5-6. Crawley swears that she asked the officer "whether plaintiff was showing any signs of distress, including profuse sweating, chest pain and/or difficulty breathing, which would have been indicators of some sort of cardiac event." Crawley Aff. at ¶ 8. However, because "[t]here was no indication that plaintiff was suffering any such symptoms," Crawley concluded that it was not an emergency situation, and "advised the Corrections Officer that

---

[1] In his Response to Defendants' Motion, Plaintiff denies complaining of burning in his chest. Pl.'s Resp. at p. 4. However, we note that Plaintiff stated in his Complaint that his "chest was burning," Compl. at p. 3, and complained in his Grievance that he "was stuck in a dorm left with a burning chest!," Grievance at p. 2.

Case 9:08-cv-00487-TJM-RFT   Document 28   Filed 02/16/10   Page 8 of 13

[Plaintiff] should sign up for the next available regular sick call." Crawley Aff. at ¶¶ 7-9. Crawley states that shortly thereafter, a sergeant called and informed her he was sending Plaintiff to the infirmary. *Id.* at ¶ 10. According to Crawley, upon Plaintiff's arrival at the infirmary, he showed no signs of physical distress, complained only of a burning sensation in his chest, and asked for more acid reflux medication, showing her a prior prescription for acid reflux medication. *Id.* at ¶ 11. Plaintiff denies asking for medication, Pl.'s Mem. of Law at p. 2, however, he stated in his Grievance that "*when I asked for something for the pain* [] . . . I was told no," and that he "tried to show [Crawley] what a [] doctor on Riker's Island gave [him] when [he] had this problem[]," Grievance at p. 2 (emphasis added). Thus, Plaintiff's statement in his Grievance confirms that he did in fact ask for medication to remedy his chest pain.

Crawley "advised Plaintiff that in order to have his medication refilled, [she] could not do so as a Nurse, he would have to sign up for regular sick call." Crawley Aff. at ¶ 12. At that point, Plaintiff "became very loud and argumentative[,] insisting that he be given medication at that time. He then left the emergency room area without permitting me to complete a more thorough examination." *Id.* As a consequence, Crawley issued Plaintiff a Misbehavior Report on October 9th charging him with interference with an employee, harassment, and disobeying a direct order; Plaintiff later pled guilty to all three charges.[2] *Id.* at ¶ 15; Dkt. No. 24-16, Scott Carlsen Aff., dated June 22, 2009, Ex. C, Disciplinary Hr'g Tr., dated Oct. 20, 2007, at p. 4 (pleading guilty with an explanation to all three charges).

Crawley asserts that Plaintiff has failed to demonstrate any deliberate indifference on her

---

[2] In his Complaint, Plaintiff does not bring any claims related to the filing of the Misbehavior Report. In his Response to Defendants' Motion, Plaintiff alleges that the Misbehavior Report was false and retaliatory in nature. These new and conclusory claims are addressed below in Part II.B.3.

part. We agree. Plaintiff has offered no evidence to rebut Crawley's sworn Affidavit. Furthermore, based on the allegations contained in Plaintiff's Grievance, it appears that Crawley examined Plaintiff, determined his condition was non-severe based on his subjective complaints and his lack of symptoms, and told him to submit his request for medicine in accordance with standard non-emergency procedures. Even assuming Crawley was incorrect in her medical assessment of Plaintiff's condition,[3] such a misdiagnosis does not constitute deliberate indifference and therefore is not a valid basis for an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. at 106 (a claim that a medical professional "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, to the extent Plaintiff brings this § 1983 claim on a theory of negligence, *see* Compl. at p. 5, that claim must fail. *Id.* Finally, Plaintiff's preference for a different course of treatment than the one provided does not form the basis of a valid § 1983 claim; a prisoner does not have the right to the treatment of his choice. *Chance v. Armstrong*, 143 F.3d at 703.

Because Plaintiff has failed to demonstrate that a material question of fact exists with respect to his Eighth Amendment claim based on Crawley's medical treatment, it is recommended that Summary Judgment be **granted** on this claim.

### 2. *Claims against Franza*

In his Complaint, Plaintiff alleges that Franza denied his request to see a doctor when the corrections officer in his unit called the infirmary on October 9, 2007. Compl. at p. 3. In support

---

[3] Defendants do not challenge Plaintiff's factual allegation that he suffered from a heart murmur condition nor his legal conclusion that his condition was sufficiently serious under the objective prong of the Eighth Amendment test. Thus, for the purposes of addressing Defendants' Motion, we need not address those issues.

of his Motion for Summary Judgment, Franza has submitted an Affidavit in which he states that the corrections officer who called the infirmary on October 9th told him that "inmate Thompson was complaining of heartburn and was out of his acid reflux medication and wanted to be seen by medical staff as soon as possible." Dkt. No. 24-14, C. Franza Aff., dated June 10, 2009, at ¶ 5. Franza states that neither heartburn nor a request for a medication refill constitute a medical emergency and therefore, he advised Plaintiff to sign up for the next regular sick call day. *Id.* at ¶ 8. Finally, Franza states that his "entire understanding of inmate Thompson's condition was based on what the Corrections Officer told [him]. In [his] professional opinion, there was nothing in the description provided to [him] by the officer that led [him] to believe plaintiff was in any danger or had a condition requiring immediate medical attention." *Id.* at ¶ 9.

Again, Plaintiff has failed to rebut Franza's Affidavit, in which he swears that based on the information provided to him by the corrections officer, he determined that Plaintiff did not require immediate medical attention. As previously discussed, such a medical assessment, even if wrong, does not constitute deliberate indifference. *Estelle v. Gamble*, 429 U.S. at 106.

For the above reasons, it is recommended that Summary Judgment be **granted** on Plaintiff's Eighth Amendment claim against Franza.

3. *Allegations against Crawley and Franza raised in Plaintiff's Response in Opposition to Defendants' Motion*

Although unmentioned in the Complaint, Plaintiff alleges in his Response to Defendants' Motion that he saw Franza during another emergency sick call on October 10, 2007. Pl.'s Mem. of Law at pp. 2-3. Plaintiff alleges that Franza threatened him during his sick call visit and conspired with Crawley to "pre-date" the Misbehavior Report in retaliation for Plaintiff's October 9th Grievance. These new allegations were not added to the Complaint by amendment, and are

therefore improper. However, even if we were to consider the merits of these new claims, they would still fail.

It is well-settled in this Circuit that "threats do not amount to violations of constitutional rights." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). Furthermore, there is "no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Gill v. Riddick*, 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005). Finally, Plaintiff's claim that Franza and Crawley conspired to file a false Misbehavior Report against him in retaliation for the Grievance he filed against them on October 9th is wholly conclusory and belied by the record. *See Bell. Atl. Corp. v. Twombly*, 550 U.S. 544-45 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level"). Plaintiff pleaded guilty to all the charges brought in Crawley's Misbehavior Report. Disciplinary Hr'g Tr. at p. 4. Moreover, the Misbehavior Report is dated October 9, 2007, and, although Plaintiff claims that Crawley and Franza "pre-dated" the Misbehavior Report, there is no evidence on the record of such action. Nor is there any other evidence to suggest that the Misbehavior Report was issued for anything other than Plaintiff's violation of the rules, for which he admitted guilt and accepted responsibility. Thus, Plaintiff's retaliation and conspiracy claims are also without merit.

For the above reasons, it is recommended that these claims be **dismissed**.

### C. Supervisory Liability

Plaintiff names Superintendent of Ulster Correctional Facility Carlsen and Administrative Nurse Ms. White as Defendants. Beyond listing these Defendants in his Complaint, Plaintiff

provides no details concerning his claims against these Defendants. However, given their supervisory roles, we assume Plaintiff seeks damages against these Defendants based on a theory of supervisory liability.

If a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, because we find that Plaintiff's underlying Eighth Amendment claims are without merit, none of the above bases for supervisory liability are applicable. *See Blyden v. Mancusi,* 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."). Therefore, to the extent Plaintiff intended to bring claims of supervisory liability against Defendants Carlsen and White, it is recommended that Summary Judgment be **granted** on those claims.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 24) be **GRANTED** and the Complaint (Dkt. No. 1) **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 16, 2010
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge